# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| NEAL TECHNOLOGIES, INC. § <br> § <br> v. § <br> § <br> UNIQUE MOTORSPORTS, INC., DUSTIN § <br> HELMS, and NATHAN HALL § | Civil Action No. 4:15-CV-00385 <br> Judge Mazzant/Judge Craven |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Neal Technologies, Inc.'s Motion for Contempt (Dkt. #193) and Submission for Attorneys' Fees (Dkt. #214). Having considered the relevant pleadings and evidence, the Court finds that Plaintiff's Motion for Contempt (Dkt. #193) is granted and Plaintiff's Submission for Attorneys' Fees (Dkt. #214) is granted in part and denied in part.

## BACKGROUND

Plaintiff Neal Technologies, Inc. ("NTI") brought suit against Defendants Unique Motorsprts, Inc. ("UMI"), Dustin Helms, and Nathan Hall for trademark infringement, unfair competition, false designation of origin, and false descriptions under the Lanham Act and Texas law. After a jury verdict in August 2016 finding UMI liable of willful unfair competition by its usage of "bulletproof" to identify its goods and services, on January 20, 2017, the Court entered its Final Judgment and Permanent Injunction ("Injunction Order") (Dkt. #184). Shortly thereafter, UMI filed for bankruptcy, which stayed this proceeding. That bankruptcy concluded, having an effective date of October 12, 2017.

In its Injunction Order (Dkt. #184), the Court restrained and enjoined UMI as follows:

1. Unique Motorsports, Inc., its owners, officers, agents, servants, employees, and attorneys, and all persons acting in concert with them, shall not, without permission from Neal Technologies, Inc. (which may be referred to herein as NTI) use "bulletproof," "bullet proof," "bullet proof diesel," or similar terms, including all

> variations that capitalize one or all the letters of these words, as trademarks, service marks, or part of design marks, or in any other manner as a source identifier in connection with the promoting, advertising, offering for sale, selling, or otherwise presenting Unique Motorsports, Inc.'s goods or services that are similar to, or of the same type as, services provided or goods manufactured or sold by NTI.
> . . .
> 5. Whenever Unique Motorsports, Inc., its owners, officers, agents, servants, employees, and attorneys, and all persons acting in concert with them are permitted by the terms of this injunction to use "bulletproof," "bullet proof," "bullet proof diesel," or any of their derivatives, or variations that capitalize one or all the letters of these words in connection with the promoting, advertising, offering for sale, selling, or otherwise presenting Unique Motorsports, Inc.'s goods or services, such advertisement or communication shall include a disclaimer with the following wording: "Unique Motorsports, Inc. is not affiliated with Neal Technologies, Inc., Bullet Proof Diesel, or BulletProofDiesel.com." These disclaimers shall be conspicuous and obvious to the average consumer reading or listening to the advertisement or communication or visiting UMI's website.

(Dkt. #184 at ¶¶ 1, 5).

On January 19, 2018, NTI filed a Motion for Contempt, asserting that UMI violated the Injunction Order through certain Facebook posts (Dkt. #193). It asserts that "[t]hese Facebook posts constitute use by UMI of bulletproof and bulletproofing as source identifiers in connection with the promotion, advertising, or otherwise presenting UMI goods or services that are similar to NTI's goods or services and all are in violation of paragraph 1 of the injunctive order." (Dkt. #193).

On February 1, 2018, UMI filed an Unopposed Motion for Extension of Time to Respond to NTI's Motion for Contempt (Dkt. #194). The same day, Gerald Roberts and Blake Rudd, counsel for UMI, filed an Emergency Unopposed Motion to Withdraw (Dkt. #195). On February 5, 2018, UMI filed a Motion for Appointment of Counsel (Dkt. #196). On February 8, 2018, UMI filed a Second Unopposed Motion for Extension of Time to Respond (Dkt. #197). On February 13, 2018, the Court issued a Memorandum Opinion and Order (Dkt. #198), denying the motion for withdrawal at the present time (Dkt. #195) and denying motion for appointment of counsel (Dkt. #196). The Court granted UMI's Second Unopposed Motion for Extension of Time to

Respond (Dkt. #197), and ordered UMI's response to the Motion for Contempt due by 5:00 p.m. on Friday, February 16, 2018. UMI did not filed a response.

Accordingly, the Court issued its Show Cause Order stating, "the Court will hold a hearing and compel the appearance of Gerald Roberts and Blake Rudd, counsel for UMI, the corporate representative for UMI, and the person designated to receive the orders from this Court, so that they can personally explain the conduct in this case by UMI and so that the Court can decide on an appropriate punishment for this alleged contempt." (Dkt. #202 at p. 3).

The Court set a show cause hearing (the "hearing") for Friday, April 6, 2018, at 9:30 a.m. (Dkt. #202 at p. 3). On April 4, 2018, NTI filed a Brief Regarding Contempt Remedies (Dkt. #206). UMI filed its Response to NTI's briefing on contempt remedies on April 5, 2018 (Dkt. #208). The Court held the show cause hearing on Friday, April 6, 2018 (Dkt. #210).

## LEGAL STANDARD

To succeed on a motion for contempt, the movant must show by clear and convincing evidence that: (1) a court order was in effect; (2) the order required or prohibited certain conduct by the respondent; and (3) the respondent did not comply with the court's order. *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004); *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

A district court has broad discretion to remedy civil contempt. *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). Civil contempt can compel compliance with a court's order and compensate an aggrieved party for losses or damages due to the contemnor's noncompliance. *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965). Compensation includes "'the cost of

bringing the violation to the attention of the court' . . . and such damages may include an award of attorneys' fees" to the party doing so. *United States v. City of Jackson*, 318 F. Supp. 2d 395, 409 (S.D. Miss. 2002) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)).

## ANALYSIS

### I. Contempt

As a preliminary matter, NTI requests that the Court order UMI and its counsel, Gerald Roberts and Blake Rudd, be jointly and severally liable for the payment of Plaintiff NTI's attorneys' fees incurred after February 26, 2018. NTI asserts that Mr. Roberts and Mr. Rudd, counsel for UMI, "were under a duty to ascertain the contempt of their client, or any discontinuance of the contemptuous acts, and so advise the Court and Plaintiff NTI immediately so as to not unreasonably multiply these proceedings." (Dkt. #214 at p. 4). Thus, NTI claims that UMI's counsel's conduct is sanctionable under 28 U.S.C. § 1927 because they purposefully failed to respond to NTI's Motion for Contempt, resulting in NTI incurring attorneys' fees and expenses.

"An attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Unreasonable and vexatious behavior requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also In re Osborne*, 375 B.R. 216, 224–25 (M.D. La. 2007) (quotations omitted) ("Unreasonable and vexatious conduct is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law."). The phrase "unreasonably and vexatiously" is described as:

4

> [C]onduct that, when viewed under an objective standard, is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense, or position that is or should be known by a lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation.

*Western Fidelity, et. al. v. Bishop*, No. 4:01-MC-0020, 2001 WL 34664165, at *22 (N.D. Tex. June 26, 2001).

The Supreme Court has recognized that courts also have an inherent power to impose attorney's fees as a sanction for bad faith conduct where the conduct at issue is not covered by a sanctioning provision. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). However, "[s]anctions under 28 U.S.C. § 1927 are punitive in nature and require 'clear and convincing evidence, that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010) (citation omitted) (emphasis in original).

The record indicates that on February 1, 2018, Mr. Roberts and Mr. Rudd filed the motion for withdrawal as UMI's counsel, informing the Court that [they were] "in fundamental disagreement with UMI as to one or more objectives" and that "UMI [had] decided to discharge [them] from this case." (Dkt. #195 at ¶¶ 3–4). The same day, UMI filed a motion to extend its deadline to respond to the Motion for Contempt, stating, "UMI needs the additional time to obtain new counsel." (Dkt. #194 at ¶ 5). The Court denied the motion to withdraw until the Motion for Contempt was resolved, but granted UMI's request to extend the deadline, stating, "UMI's response must be filed by 5:00 p.m. on Friday, February 16, 2018." (Dkt. #198 at p. 5). UMI did not file a response. Local Rule CV-7(d) provides as follows:

> **Response and Briefing.** The response and any briefing shall be contained in one document. A party opposing a motion shall file the response, any briefing and supporting documents within the time period prescribed by Subsection (e) of this rule. A response shall be accompanied by a proposed order conforming to the requirements of Subsection (a) of this rule. Briefing shall contain a concise

statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. *A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion*.

Local Rule CV-7(d) (emphasis added).

Prior to the hearing, since no response was filed, the Court assumed that UMI did not controvert the facts set out in the motion. However, UMI affirmatively declared its position at the hearing, when counsel for UMI stated that UMI "made an informed decision and decided not to respond on the merits of the motion for contempt" because it was not contesting the fact UMI had violated the Injunction Order (Dkt. #213 at 15:24-16:1).[1]

Although the Court finds UMI's counsel's strategy not to respond to NTI's Contempt Motion to be unwise, it technically had the desired effect—i.e. a presumption that UMI was not contesting the injunction violation pursuant Local Rule CV-7(d). Furthermore, NTI has failed to

---

[1] At the Show Cause hearing, the following exchange occurred:

> MR. ROBERTS: [UMI] determined that it did not care to expend the time and resources to respond to the motion as obviously, as stated in the motion and shown by the exhibits attached to the motion, there were three technical infractions of the injunction. (Dkt. #213 at 15:5-9).
> . . .
> [UMI] didn't think that it was worthy of further argument or the Court's time on those issues. (Dkt. #213 at 15:13-15).
> . . .
> [UMI] made an informed decision and decided not to respond on the merits of the motion for contempt[.] (Dkt. #213 at 15:24-16:1).
> . . .
> [T]o the extent that the Facebook posts which were on social media rather than UMI's website violated the permanent injunction, [UMI] does not contest that. (Dkt. #213 at 19:14 17).
> . . .
> And, again, to the extent that the Facebook posts, which have been taken down, somehow violate the terms of the permanent injunction, [UMI] does not argue that, Your Honor. (Dkt. #213 at 21:20-23).
> . . .
> THE COURT: Right, but they didn't use any kind of disclaimer on the Facebook posts.
>
> MR. ROBERTS: That's correct, Your Honor, and UMI acknowledges that.
> . . .
> MR. ROBERTS: And UMI does not contest that the Facebook posts violated the permanent injunction[.] (Dkt. #213 at 38:18-19).

(*See generally* Dkt. #213).

satisfy its burden to show by clear and convincing evidence that by these actions, UMI multiplied the proceedings unreasonably or vexatiously. It does not appear that failing to respond to NTI's Motion for Contempt was for any "bad faith, improper motive, or reckless disregard of the duty owed to the Court." *Vanderhoff v. Pacheco*, 344 F. App'x 22, 27 (5th Cir. 2009).

Therefore, the Court finds that the conduct of UMI's counsel was not unreasonable and vexatious, and finds that NTI's motion for attorneys' fees should be denied on this ground. However, since UMI concedes that its Facebook posts did not comply with the Court's Orders,[2] contempt is proper, and the Court must now determine what relief NTI is entitled to.

## II. NTI's Relief

NTI is entitled to compensation for fees and expenses tied to this contempt proceeding. The district court has discretion in determining a reasonable amount for attorneys' fees and litigation expenses, "and, because of its superior understanding of the litigation, frequent appellate review is to be avoided." *Lubrizol Corp. v. Exxon Corp.,* 957 F.2d 1302, 1308 n.14 (5th Cir. 1992) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)). "An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the 'lodestar method.'" *SEC v. AmeriFirst Funding, Inc.*, Civil Action No. 3:07-CV-1188-D, 2008 WL 2185193, at *1 (N.D. Tex. May 27, 2008) (quoting *Microsoft Corp. v. United Comput. Res. of N.J., Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002)). The computation of a reasonable attorneys' fee award is a two-step process. *Rutherford v. Harris Cty.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted).

---

[2] "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex.*, 659 F.2d 660, 669 (5th Cir. 1981).

The Court first calculates the "lodestar" by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. KellStrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any lodestar adjustment, the Court looks to twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson,* 488 F.2d at 717–19).

After considering the twelve *Johnson* factors, the court may adjust the lodestar upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). "If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive." *Virginia McC v. Corrigan-Camden Indep. Sch. Dist.*, 909 F. Supp. 1023, 1032 (E.D. Tex. 1995). "'[T]he most critical factor' in determining the reasonableness of [an attorneys' fee award] . . . 'is the degree of success obtained.'" *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 113 (1992)); *see also Migis*, 135 F.3d at 1047. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Virginia McC*, 909 F. Supp. at 1032 (quoting *Hensley,* 461 U.S. at 436). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

The United States Supreme Court has barred any use of the sixth factor as a basis for enhancement of attorneys' fees. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)). In addition, three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected and subsumed in the lodestar amount. *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and

labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457. The fee-seeker must submit adequate documentation of the hours reasonably expended and of the attorneys' qualifications and skill, while the party seeking reduction of the lodestar must show that a reduction is warranted. *Hensley*, 461 U.S. at 433; *La. Power & Light Co.*, 50 F.3d at 329.

### A. Hourly Rate

The first step in the lodestar analysis requires a determination of the reasonable number of hours expended by NTI's counsel, as well as the reasonable hourly rate. NTI offers time records and an affidavit in support of the application for $91,053.19 in attorneys' fees and costs for the prosecution of its Motion for Contempt. Of that total amount, NTI asserts Whitaker Chalk Swindle & Schwartz PLLC is entitled to $80,135.00, and Siebman, Burg, Phillips & Smith LLP is entitled to the remaining amount of $10,918.19, asserting that the reasonable hourly rates are as follows:

| Whitaker Chalk Swindle & Schwartz PLLC | **Rate** |
|---|---|
| Richard L. Schwartz | $580 |
| Thomas F. Harkins | $350 |
| | |
| Siebman, Burg, Phillips & Smith LLP | |
| Clyde Siebman | $495 |
| Stephanie Barnes | $425 |
| Beth Forrest | $295 |

(Dkt. #214, Exhibit A). The case law suggests that "[t]he reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The Court finds that the rates requested are reasonable.

### B. Hours Reasonably Expended

After a review of the billing records, it seems that NTI asserts Whitaker Chalk Swindle & Schwartz PLLC expended a total of 154.8 hours and the Siebman, Burg, Phillips & Smith LLP expended a total of 33.91 hours. The total requested amounts are as follows:

**Whitaker Chalk Swindle & Schwartz PLLC**

| Invoice Date | Date Services Rendered | Attorneys' Fees |
|---|---|---|
| 1/31/2018 | January 2018 | $26,647.00 |
| 2/28/2018 | February 2018 | $9,575.00 |
| 3/31/2018 | March 2018 | $25,437.00 |
| thru 4/6/2018 | thru April 6, 2018 | $18,476.00 |
| | | Total: $80,135.00 |

**Siebman, Burg, Phillips & Smith LLP**

| Invoice Date | Date Services Rendered | Attorneys' Fees |
|---|---|---|
| 2/28/2018 | January 2018 | $877.00 |
| 3/29/2018 | February 2018 | $2,669.19 |
| 4/16/2018 | March 2018 thru April 6, 2018 | $7,372.00 |
| | | Total: $10,918.19 |

(Dkt. #214, Exhibit A at p. 3).

UMI does not dispute that NTI is entitled to recover its attorneys' fees and costs incurred in connection with actually preparing and filing the Motion for Contempt and attending the hearing. However, UMI asserts that NTI's recovery of attorneys' fees and costs should not exceed $37,458.19 because it chose to not respond to the Motion for Contempt and NTI should have known that it did not need to prepare for an evidentiary debate at the hearing (Dkt. #216 at p. 6). Thus, UMI claims that after February 16, 2018, it was presumed that UMI did not controvert the facts set out in the Motion for Contempt and that UMI had no evidence to offer in opposition to the Motion for Contempt. Therefore, UMI argues the fees and costs asserted in Plaintiff's Submission for Attorneys' Fees for the period of February 17, 2018, through April 5, 2018, should be subtracted from the total amount sought (i.e. $91,053.19 – $53,595).

11

The Court does not find that UMI is entitled to benefit from failing to respond to NTI's Motion for Contempt. UMI can only speculate that since at least February 17, 2018, NTI should have known that its success on its Motion for Contempt was guaranteed. Although UMI ultimately conceded at the hearing that the Facebook posts violated the Injunction Order, it was unclear prior to the hearing if UMI was going to contest those issues.

Although the Court finds that UMI is not entitled to its asserted prorated reduction, the Court does find that there are some issues with NTI's apportionment of relevant issues that require a reduction in the fee request. NTI has "the burden of proving the reasonableness of the number of hours expended on [its] prevailing claim." *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) (citing *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987)). "[W]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded." *Hensley*, 461 U.S. at 440.

UMI asserts that NTI's Brief Regarding Contempt Remedies filed on April 5, 2018, asserted requests for relief and issues that were unavailable and irrelevant to the issue presented in its Motion for Contempt, i.e. whether the Facebook posts violated the Injunction Order. UMI further asserts that, although the hearing was on the Motion for Contempt, NTI's billing records show its attorneys expended a considerable amount of time preparing to argue certain impertinent matters during the hearing. The Court agrees.

Work done by attorneys on unsuccessful claims cannot be considered to have been expended for the result achieved. *Hensley*, 461 U.S. at 435. As the Supreme Court explained: "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* In determining which hours to include and exclude from

the lodestar, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. A party "cannot have prevailed on issues they did not pursue." *Walker*, 99 F. 3d at 769.

NTI's Brief Regarding Contempt Remedies raised new complaints asserting UMI should also be held in contempt for seeking trademark cancellation and opposition proceedings in the United States Patent and Trademark Office (Dkt #206). However, the cases cited by NTI are distinguishable because they involve consent judgments that specifically prohibit pursuing such adversarial proceedings. The Injunction Order in this case in no way prohibited UMI from pursuing trademark cancellation or opposition proceedings. Any hours spent preparing that motion should be discounted. The Court further finds that any time spent preparing to argue certain impertinent matters during the hearing, specifically the trademark cancellation and opposition proceedings, bankruptcy issues, the glitter bomb allegations, the investigations of nonparties (i.e. Revolution Rides, LLC, and Diesel Revolution, Inc.), and the expansion of the Injunction Order, should also be discounted.

Here, the bills presented to the Court are redacted, but the bills still demonstrate, at the very least, the activities that the attorneys engaged in and the hours expended on such activities. However, while the bills demonstrate the activities performed, every entry does not, on its own, demonstrate which claim the activity furthered. Thus, the Court will weigh in as an expert on reasonableness of fees and may use its own experience in deciding a fee award. *Kondos v. Allstate Lloyds*, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (citing *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted); *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 4:15-cv-828, 2017 WL 1030313, at *7 (E.D. Tex. Mar.

17, 2017) (citations omitted). Based on its review of the evidence, on its experience, and on the Court's knowledge of this case, the Court finds that the total number of hours worked by both firms should be reduced by twenty percent.

### C. The *Johnson* Factors

Many of the lodestar factors are usually "subsumed within the initial calculation of reasonably expended hours at a reasonable hourly rate." *Hensley*, 461 U.S. at 435 n.9. The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457.

"After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar." *Shipes*, 987 F.2d at 320. The Court must be careful when applying the *Johnson* factors to make sure "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id.* "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Id.* If a factor is presumably considered in the lodestar amount, the Court may still make an adjustment based on that factor; however, only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

Here, the Court has already accounted *Johnson* factors as part of the lodestar amount and the parties do not argue that any of the other *Johnson* factors require the lonestar award to be adjusted in either direction. Still, the Court has considered them on its own and all of the *Johnson* factors are presumably reflected in the lodestar amount. There are no exceptional circumstances

permitting the Court to adjust the amount. As such, the Court will not further reduce the award based on the *Johnson* factors.

### D. Calculation

The Court will apply a twenty-percent reduction to Whitaker Chalk Swindle & Schwartz PLLC, attributable to the time spent preparing NTI's Brief Regarding Contempt Remedies and impertinent issues asserted during the hearing.

| Initial Request | Percent Reduced | Amount Reduced | Amount Approved |
|---|---|---|---|
| $80,135.00 | 20% | $16,027.00 | $64,108.00 |

The Court will apply a twenty-percent reduction to Siebman, Burg, Phillips & Smith LLP, attributable to the time spent preparing NTI's Brief Regarding Contempt Remedies and impertinent issues asserted during the hearing.

| Initial Request | Percent Reduced | Amount Reduced | Amount Approved |
|---|---|---|---|
| $10,918.19 | 20% | $2,183.64 | $8,734.55 |

Whitaker Chalk Swindle & Schwartz PLLC is entitled to $64,108.00, and Siebman, Burg, Phillips & Smith LLP is entitled to the remaining amount of $8,734.55.

### CONCLUSION

It is hereby **ORDERED** that NTI's Motion for Contempt (Dkt. #193) is **GRANTED**.

It is further **ORDERED** that NTI's Submission for Attorneys' Fees (Dkt. #214) is **GRANTED in part** and **DENIED in part**. NTI's request to hold UMI's counsel jointly and severally liable under 28 U.S.C. § 1927 is **DENIED**. NTI is entitled to compensation for fees and expenses tied to this contempt proceeding in the amount of $72,842.55 in attorneys' fees. Of that amount, Whitaker Chalk Swindle & Schwartz PLLC is entitled to $64,108.00, and Siebman, Burg, Phillips & Smith LLP is entitled to the remaining amount of $8,734.55.

**SIGNED this 31st day of July, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE